## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARIBEL REYES SANTANA,

               Plaintiff,

v.

WAYNE COUNTY and WAYNE
COUNTY TREASURER, ERIC
SABREE, in his official capacity,

Defendants.

Case No. 2:22-cv-12376

Honorable Laurie J. Michelson

Magistrate Judge Curtis Ivy, Jr.

Plaintiff's Response in Opposition to
Defendants' Motion to Dismiss

---

## PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (ECF 13)

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**.................................................................................1

**STANDARD OF REVIEW** .................................................................2

**UNDERSTANDING THE FORECLOSURE PROCESS IN MICHIGAN** .......3

**PLAINTIFF'S CLAIM FOR UNLAWFUL TAKING** ........................6

**I.   STATUTE OF LIMITATIONS** .......................................................8

   **A.   DEFENDANTS' RELIANCE ON *HALL v. MEISTER*,**.........................9

   **B.   PLAINTIFF'S TAKINGS ARISING UNDER THE 5TH
AMENDMENT CLAIM.** ...................................................................11

**II.   INVERSE CONDEMNATION** ....................................................13

**III.   EIGHTH AMENDMENT CLAIMS**.............................................15

  **IV.   SOVEREIGN IMMUNITY** .......................................................15

## **INTRODUCTION**

In accordance with LR 7.1.(d), the parties communicated in writing about the nature of the motion, but no consensus regarding the motion was reached.   Defendant filed the motion before a conference was conducted.

Plaintiff Maribel Reyes Santana filed this action against Wayne County and its Treasurer, Eric R. Sabree, in his official capacity, along with his predecessors, for violation of the Takings clause under the Constitutions of the United States (federal) and State of Michigan, for the unlawful taking of the equity in her home; the usurping of the surplus proceeds after a sale in excess of Plaintiff's tax liability. Plaintiff contends that Wayne County is liable for its unlawful policies and practices that are the moving force behind these constitutional violations. Additionally, the County is liable for inverse Condemnation; and violation of the Eighth Amendment of the U.S. Constitution, for the excessive fines imposed.

In lieu of filing an Answer, Defendants filed its Motion to Dismiss (ECF 13), seeking dismissal of Plaintiff's Complaint, in its entirety, relying on Federal Rule of Civil Procedure 12(b)(6), failure to state a claim.   In filing their motion, Defendants primarily rely on a recent decision of the U.S. Sixth Circuit Court of Appeals, in *Hall v. Meisner*, 51 F.4th 185, 2022 U.S. App. Lexis 28474 (6th.Cir. 2022).   The leading argument proffered by Defendants is that the claims are barred by the Statute of Limitations, as confirmed by Hall.   However, Defendants' reliance on the recent determination is misplaced and overdrawn. The decision fails to even include the phrase "statute of limitations" in the entirety of the

opinion. For the reasons set forth herein, Plaintiff requests the Court to deny the motion.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.   Dismissal under Rule 12(b)(6) eliminates a pleading or portion of a pleading that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134 (6th Cir. 1996)*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*).   Therefore, in deciding this motion, the Court should accept all of Plaintiff's factual allegations as true and construe the complaint in the light most favorable to the Plaintiff." *Gunasekera v. Irwin*, 551 F.3d 461, 465-66 (6th Cir. 2009).

A district court's consideration of documents that are central to the plaintiffs' claims and to which the complaint refers and incorporates as exhibits is proper

when assessing a Rule 12(b)(6) motion. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

## BACKGROUND
## UNDERSTANDING THE FORECLOSURE PROCESS IN MICHIGAN

Under Michigan's General Property Tax Act ("GPTA"), *Mich. Comp. Laws § 211.1 et seq.*, the county treasurer or the State may act as a collection agent for the municipality and is permitted to recover unpaid property taxes, penalties, and fees through tax foreclosure. *Mich. Comp. Laws § 211.78(8)(a)*.   Wayne County, like many other counties have elected to have its treasurer (Defendant Eric Sabree and his predecessors) serve as the Foreclosing Governmental Entity (FGE) and seek judgments of foreclosure. *See Complaint ¶ 11*.   In contrast, the State may do so. *see also id. § 211.78(3)*.

On July 17, 2020, the Michigan Supreme Court issued a decision addressing the situation where a tax foreclosure sale yields a price higher than the unpaid taxes that led to the foreclosure. *Rafaeli, LLC v. Oakland Cty., 505 Mich. 429, 952 N.W.2d 434 (Mich. 2020)*. In *Rafaeli*, former property owners who failed to pay their property taxes and lost their properties to tax foreclosure sued the county and county treasurer "alleging due-process and equal-protection violations as well as an unconstitutional taking." *Id. at 442*. Plaintiffs "alleged that [the] defendants, by selling [the] plaintiffs' real properties in satisfaction of their tax debts and retaining

3

the surplus proceeds from the tax-foreclosure sale of their properties, had taken their properties without just compensation in violation of the *Takings Clauses of the United States* and Michigan Constitutions." *Id. at 442*. The Michigan Supreme Court agreed that a taking had occurred in violation of the Michigan Constitution.

The *Rafaeli* Court held that Michigan's "common law recognizes a former property owner's property right to collect the surplus proceeds that are realized from the tax-foreclosure sale of property." *Id. at 459*. The Court further found that Michigan's 1963 Constitution protected a former owner's right to collect the surplus proceeds and that "[w]hile the Legislature is typically free to abrogate the common law, it is powerless to override a right protected by Michigan's *Takings Clause*." *Id. at 460*. Accordingly, the Court held that once a foreclosed property is sold at auction by the county or county treasurer, the county may collect *only* the amount needed to satisfy the former property owner's unpaid property tax, interest, penalties, and fees owed. *Id. at 461*. Any surplus proceeds remaining after the sale of the property belong to the former property owner. *Id.* The Court concluded that the surplus proceeds must be returned to a former property owner and that the "failure to do so constitutes a government taking under the Michigan Constitution entitling [the] plaintiffs to just compensation." *Id. 463*.

After *Rafaeli*, to circumvent the financial impact of the decision, the Michigan legislature amended the GPTA effective December 22, 2020. The amendments

provided a procedure that allows a former property owner to seek the remaining proceeds from the transfer or sale of a foreclosed property.   The procedure under the GPTA, in part, reads as follows:

(1) A claimant may submit a notice of intention to claim an interest in any applicable remaining proceeds from the transfer or sale of foreclosed property under *section 78m*, subject to the following:

  (a) For foreclosed property transferred or sold under *section 78m* after July 17, 2020, the notice of intention must be submitted pursuant to subsection (2).

  (b) For foreclosed property transferred or sold under *section 78m* before July 18, 2020, both of the following:

    (i)   A claim may be made only if the Michigan Supreme Court orders that its decision in *[Rafaeli]*, applies retroactively.
    (ii)  Subject to subparagraph *(i)*, the notice of intention must be submitted pursuant to *subsection (6)*.

*Mich. Comp. Laws § 211.78t(1).*

Courts have construed this provision to mean that a former property owner whose property was transferred or sold before July 18, 2020, may file a claim through this procedure only if the Michigan Supreme Court declares that *Rafaeli* applies retroactively, which it has not yet done. *See Fox v. Cty. of Saginaw by Bd. of Comm'rs, No. 1:19-CV-11887, 2021 U.S. Dist. LEXIS 192579, 2021 WL 4552989, at \*1 n.1 (E.D. Mich. Oct. 5, 2021).; see also Hall v. Meisner, No. 20-12230, 2021 U.S. Dist. LEXIS 192588, 2021 WL 4522300, at \*2 (E.D. Mich. Oct. 4, 2021).* Since the condition precedent of the Michigan Supreme Court deciding whether *Rafaeli*

applies retroactively has not been met, the procedure  does not apply to Plaintiff, whose property was sold at auction before July 18, 2020.

## **BACKGROUND FACTS**
## **PLAINTIFF'S CLAIM FOR UNLAWFUL TAKING**

Defendant Wayne County administers a tax foreclosure-and-auction process that regularly results in the selling of a parcel of land at auction, often for far less than its fair market value, yet Wayne County retains the entire amount of the proceeds, including the surplus in excess of the tax obligation. *Complaint ¶ 17.* Even if the proceeds exceed the amount of the delinquent taxes, Wayne County fails to return any of the excess to the rightful property owner or provide "just compensation for that portion of the equity destroyed for selling under the fair market value. *Id. at ¶ 18.*[1]

Plaintiff Maribel Santana was the owner of the real property commonly known as 5652 Cabot, Detroit, Michigan, being Parcel No. 20007863 (hereinafter the "Reyes Property"). *Complaint ¶ 23.*   The Reyes Property was previously titled in the name of Heriberto Reyes who died on June 25, 2001. Id at ¶ *24.*   Prior to his death, he conveyed the property to his wife by way of a Judgment of Divorce. *Id.*

---

[1] For purposes of Plaintiff's Complaint, "Equity" means the amount by which a property's fair market value exceeds the tax delinquency. *Complaint ¶ 20.* Likewise, Fair Market Value is defined as the price at which the property would change hands between a willing buyer and willing seller. *Complaint ¶ 21.*

*at ¶ 17.*

On or around March 1, 2013, and again on March 1, 2014, the Reyes'
property was forfeited to the Wayne County Treasurer[2], for property taxes owed
for 2011 and 2012. *Complaint, ¶25.* On March 20, 2015, the Treasurer of Wayne
County successfully petitioned for and seized ownership of Reyes' Property
through a judgment of foreclosure in Civil Action No. 14-007672-CH in the Wayne
County Circuit Court, on behalf of Defendant Wayne County. *Id. at ¶ 26.*

At the time of the foreclosure sale, the property had a fair market value of
at least $35,000.00. *Id. at ¶ 27.* Defendants sold the Reyes property at auction to
a private buyer for $6,100.00, on November 10, 2015. ***See Exhibit 1.*** The buyer
at the auction, turned around and sold the home to a private buyer months later for
$7,000.00, upon information and belief, without doing any appreciable work. ***See***
***Exhibit 2.*** The tax delinquency was only $319.64. *Id. at ¶ 29.* Although the
property was sold below the fair market value, it was sold far above the tax
delinquency. *Id. at ¶ 30.* Defendants offer no process, plan, procedure, or legal
mechanism for seeking return of the Equity seized about the tax delinquency, or
the surplus proceeds. *Id. at ¶ 31-33.*

---

2 Although Plaintiff's Complaint alleges that it was Sabree who foreclosed on the property, it is
better stated that it was the office of the Wayne County Treasurer. Upon information and belief,
Sabree became the treasurer in April 2016. Prior to that time, from 2011-2016, Sabree was the
deputy treasurer. Treasurer Raymond Wojtowicz was his predecessor.

Defendants did not initiate a condemnation action or process for Plaintiff's equity in the Reyes property. *Id. at ¶ 34.* Failure to offer a process, procedure, or plan, is embedded in the policy of Wayne County, which is the moving force behind the violation of Plaintiff's constitutional rights. *Id. at ¶ 37.* The Wayne County policy is a pattern or practice of Defendants that is a discretionary decision for the Treasurer to follow as the Foreclosing Governmental Entity (FGE).

The policy and practice of Wayne County Defendants, to never return the surplus proceeds, or lost equity is official county policy for purposes of municipal liability. *Id. at ¶ 40.* The policy is inherently unconstitutional as implemented by Wayne County, which is not mandatory, but discretionary implementation of the General Property Tax Act. *Id. at ¶ 42.* The implementation is designed to intentionally deprive citizens, like Plaintiff, or done in reckless disregard of the rights of taxpayers. *Id. at ¶ 43.*

Because the Reyes property was sold by the county on November 10, 2015, the claim for surplus proceeds against Defendant did not arise until that date. *See Exhibit 1.* But more importantly, the question of limitations involves not only when the statute of limitation begins to run, it includes when the claim is tolled.

## I.    <u>STATUTE OF LIMITATIONS</u>

8

## A. DEFENDANTS' RELIANCE ON *HALL v. MEISTER*, FOR STATUTE OF LIMITATIONS IS SERIOUSLY MISPLACED.

Defendants' reliance on *Hall v. Meister*, 51 F.4th 185 (6th.Cir 2022), for the proposition that the claim is barred by the statute of limitations, as claimed by Defendants is seriously misplaced. Defendants lead their brief with the argument that the claims brought by Plaintiff are barred by the statute of limitations, as confirmed by Hall. *Defendants' Motion at p. 4*. However, the phrase "statute of limitations" never appears in the opinion. Defendants' "one size fits all" argument have been repeatedly rejected by courts.3 Plaintiff brought four takings claims in this action, with different applicable statutes of limitations. Under Michigan law, for claims brought under Section 1983, the court applies the statute of limitations for personal injury tort actions in the where the cause of action occurred. *Owens v. Okure*, 488 U.S. 235, 249-250 (1989). In Michigan there is a three-year statute of limitations. *MCL 600.5805(2)*.

Although Plaintiff's § 1983 takings claim appears to be time barred as he filed her Complaint in 2022, and the claims arose more than three years earlier, Plaintiff relies on tolling based on the pendency of putative class actions where she would

---

3 This is not a novel argument. It has been repeatedly rejected by courts, including matters where defense counsel here was representing the defendants in other actions. *See Palakurthi v. Wayne County*, 2022 U.S. Dist. LEXIS 56356 ; 2022 WL 943032, E.D.Mich. Civil Case 21-10707 (March 28, 2022). *See also Bowles v. Sabree*, 2022 U.S. Dist. LEXIS 8172 ; 2022 WL, E.D.Mich. Civil Case 20-12838 (January 14, 2022)

have been a member of the class. (citing *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354, 103 S. Ct. 2392, 76 L. Ed. 2d 628 (1983).) The Supreme Court explained in *Crown*:

> **We conclude, as did the Court in *American Pipe*, that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."** ***Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974). Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.**

*Crown*, 462 U.S. at 353-54 (1983). At least one district court in the Sixth Circuit has addressed a similar argument. *See Grainger, Jr. v. Cnty. of Ottawa*, No. 1:19-CV-501, 2021 U.S. Dist. LEXIS 38472, (W.D. Mich. Mar. 2, 2021) (*holding that the statute of limitations for a § 1983 Fifth Amendment takings claim was tolled by Wayside Church v. Van Buren County, Case No. 14-cv-1274 (W.D. Mich. 2014*)). The plaintiff in Wayside Church filed a putative class action complaint on December 11, 2014, seeking to certify the following class:

> **owners of real property located within the State of Michigan whose real property was taken by Defendant, and Defendant class, for non-payment of real property taxes . . . and sold by Defendant, and Defendant class, to third parties for net proceeds in excess and substantially in excess of all delinquent taxes, interest, penalties and fees due on the property, . . . . ('surplus proceeds'), without offer, tender or return of the surplus to Plaintiffs and members of Plaintiffs class."**

10

Compl. ¶ 4, *Wayside Church*, 14-cv-1274-PLM (W.D. Mich. filed December 11, 2014), ECF No. 1 at Pg ID 22; Thus, Wayne County was contemplated to be a member of the Defendant class and Plaintiff was a putative class member as of November 10, 2015.

On February 16, 2021, the *Wayside* court dismissed half of the defendant class narrowing the claims to counties in the Western District. *Wayside Church v. Van Buren Cty.*, No. 1:14-CV-1274, 2021 U.S. Dist. LEXIS 52975, 2021 WL 1051543, at 2 (W.D. Mich. Feb. 16, 2021). However, before that decision, on October 22, 2020, *Bowles v. Sabree*, was filed in the as a putative class action on behalf of similarly situated individuals in Wayne and Oakland Counties. *Wayside* and *Bowles*, therefore, tolled the statutes of limitations applicable to Plaintiff's claims. When Plaintiff filed this action on October 5, 2022, the action was timely filed within the three-year statute of limitations. For that reason, Plaintiff's claims are not time barred and Defendants' Motion to Dismiss should be denied.

### B. PLAINTIFF'S TAKINGS ARISING UNDER THE 5TH AMENDMENT CLAIM IS TIMELY FILED UNDER FIRST ENGLISH EVANGELICAL LUTHERAN STANDARD.

Similarly, Defendants' statute of limitations argument for Takings arising under the Fifth Amendment is likewise meritless. The Takings claim arising under the Fifth Amendment is premised on the Constitution itself and not based on any

statute. The Fifth Amendment, made applicable to the states via the Fourteenth Amendment, is a self- executing constitutional provision, requiring the payment of just compensation under the takings clause. *First English Evangelical Lutheran Church of Glendale v. County of LA*, 482 U.S. 304, 315 (1987). The Supreme Court held that statutory recognition of a Fifth Amendment takings claim, such as 42 USC section 1983, is not necessary for a federal takings claim.

Therefore, the most analogous cause of action to a directly-arising federal takings claim, like *First English Evangelical Lutheran*, would be an inverse condemnation action under state law. In Michigan, there is a six-year statute of limitations for inverse condemnation. *Hart v. City of Detroit*, 416 Mich. 488, 503 (1982). Therefore, this federal takings claim should have a six-year statute of limitations. The property was "taken" by Defendants on March 20, 2015, when the Treasurer of Wayne County successfully petitioned for and seized ownership of Reyes' Property through a judgment of foreclosure in Civil Action No. 14-007672-CH, in the Wayne County Circuit Court, on behalf of Defendant Wayne County. *Complaint at ¶ 26; see also Exhibit 1.* Plaintiff filed his lawsuit within six years of the when the property was taken, when addressed in the context of tolling. Again, Michigan law provides that all statutes of limitations are tolled during the

putative class stage of another class action. *MCR 3.501(F)(1)*.[4]   Accordingly,

using the rationale in *Hart v. City of Detroit*, 416 Mich. 488 (1982), the Fifth

Amendment claim and the inverse condemnation claim are timely filed.

## II.   <u>INVERSE CONDEMNATION</u>

Inverse condemnation is a taking of private property for a public use without

the commencement of condemnation proceedings. Under the Michigan and United

States Constitutions, a victim of such a taking is entitled to just compensation for

the value of the property taken.   A plaintiff in an inverse condemnation action,

whose real property was taken for public use without condemnation proceedings, is

entitled to just compensation for the value of the property, under both federal law

and state law. (*U.S Const, Am V; Const 1963, art 10, § 2).*

Defendants argue that the decision in the *Hall* requires dismissal of

Plaintiff's inverse condemnation claim. See Brief, p. 5 (ECF 13, PageID.75). In

essence, Defendants' claim that the Inverse Condemnation claim is somehow

preempted by other federal claims pled in the alternative.

Ordinary preemption, for instance, flows from the Supremacy Clause of the

United States Constitution and provides only a defense that can be invoked in state

---

4 *Rule 3.501 - Class Actions*, Mich. Ct. R. 3.501 ("**(F)** Statute of Limitations. **(1)** The statute of limitations is tolled as to all persons within the class described in the complaint on the commencement of an action asserting a class action.")

or federal court. *See Matthews v. Centrus Energy Corp.*, 15 F.4th 714, 720 (6th

Cir. 2021). The "misleadingly named doctrine" of complete preemption, by

contrast, refers to a jurisdictional doctrine that is distinct from ordinary

preemption. *Hogan v. Jacobson*, 823 F.3d 872, 879 (6th Cir.

2016) (*quoting Hughes v. United Air Lines*, *Inc.*, 634 F.3d 391, 393 (7th Cir.

2011)); see also *Matthews*, 15 F.4th at 720-21 (distinguishing

between [*11]  forms of preemption).

Complete preemption occurs where "the pre-emptive force of a federal

statute is so extraordinary that it converts an ordinary state common-law complaint

into one stating a federal claim for purposes of the well-pleaded complaint rule.

*Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S. Ct. 1542, 95 L. Ed. 2d 55

(1987). Once an area of state law has been completely pre-empted, any claim

purportedly based on that pre-empted state law is considered, from its inception, a

federal claim, and therefore arises under federal law.   *Id.* (citing *Franchise Tax

Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 24, 103 S. Ct. 2841, 77 L. Ed. 2d

420 (1983)). Thus, a state-law claim cannot stand and that is completely

preempted. This is not the case here.   Plaintiff's inverse condemnation claim is an

alternative to other takings claims and Defendants have offered no independent

justification for dismissal of the claim.

14

The Supreme Court has found only three provisions of federal law to be completely preemptive.[5]   In each such instance, the federal statute provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action. This is not the case is this situation. Therefore, the state law claim for Inverse Condemnation should remain as properly pled.

### III.   EIGHTH AMENDMENT CLAIMS
Understanding the ruling in Hall, Plaintiff concedes the Eighth Amendment claim.

### IV.   SOVEREIGN IMMUNITY

In order to succeed in its claim for municipal liability against Wayne County and the Wayne County Treasurer, under 42 USC § 1983, "Plaintiff must prove that her constitutional rights were violated and that a policy or custom of the governmental entity was the 'moving force' behind the deprivation of her rights." *Monell v. Dep't of Soc Servs of City of New York*, 436 US 658, 694; 98 S.Ct. 2018, 56 L. Ed 2d 611 (1978); *see also Miller v. Sanilac Cnty*, 660 F3d 240, 254-55 (6th Cir. 2010).   A policy or custom may consist of: (1) the municipality's legislative

---

5  § 301 of the Labor Management Relations Act ("LMRA"), § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), and §§ 85 and 86 of the National Bank Act. *See AmSouth Bank v. Dale*, 386 F.3d 763, 776 (6th Cir. 2004).

enactments or *official agency policies*; (2) *actions taken by officials with final decision-making authority*; (3) a policy of inadequate training or supervision; or, (4) a custom or tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F 3d 426, 429 (6th Cir 2005). (*emphasis added*).

Here, the Complaint clearly demonstrates the pattern of conduct by Defendants through the policies of Wayne County and the Office of the Treasurer:

- The county works through and / or in concert with its treasurer Eric R. Sabree and his predecessor(s), who have illegally seized property in the form of excess/surplus equity from private individuals and entities without just compensation. ***ECF 1, PageID. 2.***

- they [ Defendants] generally foreclose, sell the property at a reduced amount, and keep the proceeds and excess/surplus equity for itself. ***ECF 1, PageID. 2.***

- As a result of Wayne County's implementation of the foreclosure process, property owners lose the entire value of their property, which is often more than the outstanding tax bills. ***ECF 1, PageID.2.***

- As implemented, Wayne County's conduct constitutes a violation of the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution and a violation of Article X, Section 2 of the Michigan

Constitution; and an impermissible inverse condemnation under Michigan law. ***ECF 1, PageID. 2-3***

- This case challenges the implementation of the process that involves what occurs after the taxation process is completed by a foreclosure sale and excess or surplus equity remains after the county is paid in full for all delinquent taxes, interest, penalties, and fees. ***ECF 1, PageID. 4-5.***

- Defendant Wayne County administers a foreclosure-and-auction process that regularly results in the selling of a parcel of land at auction (often times for far less than its fair market value), yet Wayne County retains the entire amount of the proceeds. ***ECF 1, PageID. 5.***

- Furthermore, even if the sale proceeds exceed the amount of the delinquent taxes, Wayne County does not return any of the excess to the former property owner or provide "just compensation" for that portion of the equity destroyed by underselling the parcel. ***ECF 1, PageID.5.***

- In other words, the equity of the property owner is taken, without just compensation, by a process of systematic selling under the fair market value of the property. ***ECF 1, PageID.5.***

- Defendants seized Plaintiff's Equity in the Reyes Property by

foreclosing upon said property, selling it at auction for an amount much lower than its fair market value, but still far more than the Tax Delinquency, and failing to return any of the Equity to her. ***ECF 1, PageID.7.***

- Neither Defendant Wayne County nor Defendant Eric R. Sabree afforded any process, plan, or legal mechanism for Plaintiff to seek or achieve the return of the Equity seized above the tax delinquency. ***ECF 1, PageID.7.***

- Thus, the Defendants took or destroyed all of Plaintiff's Equity in the Reyes Property. ***ECF 1, PageID.7.***

- The Defendants refused and continue to refuse to pay just compensation for Plaintiff's Equity in the Reyes Property. These Defendants also have failed to provide any mechanism at all for any such compensation. ***ECF 1, PageID.7.***

- Neither the Defendant Wayne County nor Defendant Eric R. Sabree initiated any condemnation action or process for Plaintiff's Equity in the Reyes Property. ***ECF 1, PageID.7.***

- In addition to the Reyes Property, these Defendants have, in an identical fashion as outlined above, seized other pieces of real property

within Wayne County from other individuals and entities similarly situated. ***ECF 1, PageID.8.***

- The actions described herein is a policy, custom, and/or practice of Defendant Wayne County and its policymakers and implementors. ***ECF 1, PageID.8.***

- This voluntary policy and/or practice of Defendant Wayne County is governmental action sufficient to impose damages and other relief pursuant to *Monell v New York City Department of Social Services*, 436 U.S. 658 (1978), and its progeny. ***ECF 1, PageID.8.***

- Specifically, Defendant Wayne County made the affirmative, voluntary, and discretionary decision to follow a pattern or practice of selecting and designating its duly elected treasurer to act as the Foreclosing Governmental Entity. See MCL 211.78(3)- (6). ***ECF 1, PageID. 8.***

- Moreover, Defendant Wayne County, either through enactment of laws or regulations, official agency or governmental entity policy, and/or actions taken by an official or officials with final decision-making authority has administered the County's foreclosure and auction process generally, including MCL 211.78m(8), so that after

the County sells a parcel at auction, the County retains the entire amount of the proceeds, even if the proceeds exceed the amount of the Tax Delinquency, and never returns anything to the property owner, nor provides any mechanism by which the property owner can secure a return of his, her, or its Equity. ***ECF 1, PageID.8-9.***

- Accordingly, the actions are pursuant to an official county policy for purposes of *Monell* doctrine liability of a municipality. ***ECF 1, PageID.9.***

- The General Property Tax Act, and specifically MCL 211.78m(8), does not require the practices that Plaintiffs complain of here. Rather, the Act can be fairly read to provide for Equity to be returned to the previous owner of a foreclosed property before the resulting funds are allocated. ***ECF 1, PageID.9.***

- In the alternative, the Act, and in particular MCL 211.78m(8), are inherently unconstitutional as implemented: if the Act requires Defendants' conduct as set forth herein, then, the Act violates the Michigan and United States Constitutions for all of the reasons that Defendants' conduct violates them. ***ECF 1, PageID.9.***

- The actions of Defendants were designed to intentionally or wantonly

cause harm to Plaintiffs and the proposed class due to the utter disregard of Plaintiffs' and the class' constitutionally protected rights. ***ECF 1, PageID.9.***

The Complaint sets forth a basis for liability, which is sufficient to justify denying Defendants' Motion to Dismiss.   Accordingly, Defendants' Motion should be denied.

WHEREFORE, Plaintiff respectfully requests this Court to deny Defendants Motion and permit this case to proceed on the merits.

Respectfully submitted,

/s/Marvin D. Wilder
Marvin D. Wilder (P53871)
*Co-Counsel for Plaintiff*
500 Griswold Street, Suite 2340
Detroit, MI 48226
(313) 731-6081
mdwilder@wilderlegal.com

-and-

LEGAL WARRIORS, PLLC
Lillian F. Diallo (P52036)
Attorneys for Plaintiff
500 Griswold, Suite 2340
Detroit, MI 48226
(313) 965-6633
lilliandiallo@sbcglobal.net

Date: February 1, 2023

21

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MARIBEL REYES SANTANA,

                 Plaintiff,

v.

WAYNE COUNTY and WAYNE
COUNTY TREASURER, ERIC
SABREE, in his official capacity,

Defendants.

Case No. 2:22-cv-12376

Honorable Laurie J. Michelson

Magistrate Judge Curtis Ivy, Jr.

Plaintiff's Response in Opposition to
Defendants' Motion to Dismiss

---

## BRIEF FORMAT CERTIFICATION FORM

I, Marvin D. Wilder, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

⊠ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

⊠ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

⊠ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

⊠ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

⊠ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

⊠ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

⊠ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

/s/ Marvin D. Wilder (P53871)
Dated: 2/1/2023

2