UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIBEL REYES SANTANA,

    Plaintiff,

v.

COUNTY OF WAYNE and
WAYNE COUNTY TREASURER,

    Defendants.

Case No. 22-12376
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS [14]**

Maribel Reyes Santana owed $319.64 in property taxes on her Detroit home which was allegedly worth $35,000 when Wayne County seized it. The County then sold it at a November 2015 tax foreclosure auction for $6,100 and refused to refund the difference. Over seven years later, Santana filed this suit on behalf of herself and a class of all other similarly situated homeowners. She alleges that Wayne County and the Wayne County Treasurer violated the Fifth Amendment's Takings Clause and the Eighth Amendment's Excessive Fines Clause by not returning the excess proceeds or excess equity from the foreclosure sale after recouping the unpaid taxes. She also brings a takings claim and an inverse-condemnation claim under Michigan law.

Defendants believe the case was filed too late, among other legal deficiencies, and have moved to dismiss all of Santana's claims. (ECF No. 14.) For the reasons that follow, the Court will grant Defendants' motion.

## I. Background

Before addressing the merits of Defendants' motion, some background is helpful.

Santana owned a home on Cabot Street in Detroit, Michigan. (ECF No.1, PageID.6.) After Santana failed to pay about $320 in property taxes in 2011 and 2012, she forfeited the property to the Wayne County Treasurer. (*Id.*) On March 20, 2015, the Wayne County Treasurer seized ownership of the Cabot property in a foreclosure action in Wayne County Circuit Court. (*Id.*) Wayne County then sold the property to a private party at a November 10, 2015, foreclosure auction for $6,100. (ECF Nos. 16-1, 16-2.) Santana says the property had a fair market value of $35,000 at the time of the foreclosure sale. (ECF No. 1, PageID.6.)

Although Santana's tax delinquency was significantly less than the amount Wayne County received from the foreclosure sale—a difference of over $5,700—the County never returned any excess proceeds to her. Instead, consistent with state law at the time, the County kept the proceeds. Defendants say state law "directs foreclosing governmental units to spend the 'excess surplus' in specific ways, none of which include reimbursing the delinquent taxpayer." (ECF No. 14, PageID.96 (citing Mich. Comp. Laws § 211.78m(8)).) Indeed, under the Michigan General Property Tax Act, no matter what the sale price of a foreclosed home, "the property's former owner ha[s] no right to any of the proceeds." *See Hall v. Meisner*, 51 F.4th 185, 188 (6th Cir. 2022), *reh'g denied*, No. 21-1700, 2023 WL 370649 (6th Cir. Jan. 4, 2023), *cert. denied sub nom.*, *Meisner v. Tawanda Hall*, 143 S. Ct. 2639 (2023); *see also Rafaeli, LLC v.*

2

*Oakland Cnty.*, 952 N.W.2d 434, 446 (Mich. 2020) ("Michigan is one of nine states with a statutory scheme that requires the foreclosing governmental unit to disperse the surplus proceeds to someone other than the former owner.").

But the law has recently changed. Indeed, the Michigan Supreme Court and the United States Supreme Court have both held that withholding surplus proceeds from a tax-foreclosure sale is an unconstitutional taking without just compensation in violation of both the Michigan Constitution and the Fifth Amendment of the United States Constitution. *See Rafaeli*, 952 N.W.2d at 463 (holding that foreclosing county was "required to return the surplus proceeds to plaintiffs and that [the County's] failure to do so constitutes a government taking under the Michigan Constitution entitling plaintiffs to just compensation"); *Tyler v. Hennepin Cnty., Minn.*, 598 U.S. 631, 639 (2023) ("The County had the power to sell Tyler's home to recover the unpaid property taxes. But it could not use the toehold of the tax debt to confiscate more property than was due. By doing so, it effected a 'classic taking in which the government directly appropriates private property for its own use.'" (internal citation omitted)).

So Santana filed this action on October 5, 2022. She brought a Fifth Amendment Takings Clause claim and Eighth Amendment Excessive Fines Clause claim under 42 U.S.C. § 1983; she also brought a Takings Clause claim arising directly under the Fifth Amendment (rather than under § 1983), a takings claim under the Michigan Constitution, and an inverse-condemnation claim under Michigan law. (ECF No. 1, PageID.13–19.)

3

In time, Defendants moved to dismiss all of Santana's claims. Defendants argue that: (1) Santana's federal takings claims are time-barred; (2) Santana has failed to state a claim under the Eighth Amendment; (3) Santana has failed to state an inverse-condemnation claim; and (4) the Court should not exercise jurisdiction over Santana's Michigan Constitution takings claim. The Court will take each argument in turn after addressing the relevant standard of review.

## II. Legal Standard

In deciding this motion to dismiss, the Court "construes the complaint in the light most favorable" to Santana and determines whether her "complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but they must "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). What is plausible is "a context-specific task" requiring this Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III. Federal Takings Clause Claims

Whatever the merits of her Takings Clause claims, Defendants argue that Santana was too late in bringing them. The Court agrees.

Specifically, Defendants say that Santana's federal takings claims are subject to a three-year statute of limitations in Michigan. And they say that under the Sixth

4

Circuit's holding in *Hall*, Santana's claims accrued when Wayne County took possession and title of her property on March 20, 2015. So, say Defendants, Santana's takings claims expired on or around March 20, 2018—over four years before she filed this suit. *See Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 839 F.3d 458, 464 (6th Cir. 2016) ("[W]here one can determine from the face of the complaint that the statute of limitations has run, dismissal is appropriate." (citing *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008))).

In response, Santana concedes that her § 1983 takings claim is subject to a three-year limitations period. But she maintains that her takings claims are timely because (1) the Fifth Amendment is self-executing, and her claim arising directly under the Fifth Amendment allegedly has a six-year limitations period, (2) the limitations period did not begin to run until the date the property was sold by the County, and (3) her claims were tolled by two class-action lawsuits—*Wayside Church v. Van Buren Cnty.*, No. 14-01274 (W.D. Mich. 2014) and *Bowles v. Sabree*, No. 20-12838 (E.D. Mich. 2020). (*See* ECF No. 16, PageID.116.)

To start, the Court will dismiss Santana's takings claims "arising directly under" the Fifth Amendment (Count II). (*See* ECF No. 1, PageID.15.) The Sixth Circuit has held that "in cases where a plaintiff states a constitutional claim under 42 U.S.C. § 1983, that statute is the exclusive remedy for the alleged constitutional violations." *Thomas v. Shipka*, 818 F.2d 496, 499 (6th Cir. 1987), *vacated and remanded on other grounds,* 488 U.S. 1036 (1989); *see also Foster v. Michigan*, 573 F. App'x 377, 391 (6th Cir. 2014) (stating that "[t]o the extent [plaintiffs] attempt to

5

assert direct constitutional claims, they fail; we have long held that § 1983 provides the exclusive remedy for constitutional violations." (internal citations omitted)); *Roath v. Lee*, No. 3:17-cv-995, 2019 WL 3066533, at *7 (M.D. Tenn. July 12, 2019) (stating that "[t]his Court finds the Sixth Circuit's broad statement that Section 1983 provides the exclusive remedy for constitutional violations to be applicable here and thus will apply it"); *Eggleton v. Town of Clendenin*, No. 2:07-cv-26, 2007 WL 9718532, at *7 (S.D. W. Va. Sept. 27, 2007) (collecting circuit court authority including *Thomas*); *Grainger, Jr. v. Cnty. of Ottawa*, No. 1:19-CV-501, 2021 WL 790771, at *11 (W.D. Mich. Mar. 2, 2021) (dismissing takings claim brought directly under the Fifth Amendment). Accordingly, Santana's takings claim brought directly under the Fifth Amendment (Count II) is dismissed.

Now to Santana's takings claim brought under § 1983.

"Because Congress did not specifically adopt a statute of limitations governing § 1983 actions, 'federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought.'" *Wolfe v. Perry*, 412 F.3d 707, 713–14 (6th Cir. 2005) (quoting *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003)). In Michigan, "the appropriate statute of limitations to be borrowed for § 1983 actions . . . is the state's three-year limitations period for personal injury claims." *Id.*; *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 867 n.8 (6th Cir. 2020) (noting that "§ 1983 claims brought in Michigan are subject to its three-year statute of limitations"). And the Sixth Circuit has consistently held that the limitations period for a § 1983 claim begins to run "when

6

the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *See Garza*, 972 F.3d at 867 n.8 (quoting *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996)).

The parties dispute whether the limitations period on Santana's claim began to run on the date of seizure or on the date of sale. Defendants are correct that, in *Hall*, the Sixth Circuit found that the unconstitutional taking occurred when the county took absolute title of the plaintiff's property. Importantly though, in *Hall*, unlike here, the county never held a foreclosure auction. *Hall*, 51 F.4th at 196 (stating that "the act of taking is the event which gives rise to compensation" and that event here was "the County's taking of 'absolute title' to the plaintiffs' property" (internal citations and quotations omitted)). But if the property interest that gives rise to Santana's takings claim is the surplus proceeds Wayne County kept after the foreclosure sale occurred, it follows that the act that provided the basis for her injury was the County selling her home at the foreclosure auction and failing to return any excess proceeds. *See Rafaeli*, 952 N.W.2d at 462 ("Indeed, a former property owner only has a right to collect the surplus proceeds from the tax-foreclosure sale; that is, a former property owner has a compensable takings claim if and only if the tax-foreclosure sale produces a surplus."); *see also, Grainger, Jr. v. Cnty. of Ottawa*, No. 1:19-CV-501, 2021 WL 790771, at *6 (W.D. Mich. Mar. 2, 2021) (finding that plaintiffs' takings claim began accruing when county sold the property at a foreclosure sale and transferred the property through a quit claim deed).

7

But the Court need not resolve this issue because, either way, Santana's claims are time-barred. In other words, even giving her the benefit of the doubt and using the later date of the foreclosure sale, Santana's claim would have accrued in November 2015 when the property was sold at auction. Thus, it would have expired in November 2018, almost four years before she filed this suit in October of 2022.

So that leaves only the question of tolling—that is, Santana's takings claim under § 1983 will be time-barred unless the Court finds that the statute of limitations should be tolled.

Santana argues that her claims were tolled while two related class actions were litigated. In *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), the Supreme Court stated that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554 (footnote omitted). "Later the Court applied this rule in a Title VII case and clarified the duration and effect of the tolling." *Andrews v. Orr*, 851 F.2d 146, 148–49 (6th Cir. 1988) (citing *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345 (1983)). There, the Court stated that "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Crown*, 462 U.S. at 354.[1]

---

[1] Importantly, only individual claims brought by putative class members can be tolled under *American Pipe*, which means that Santana's class claims must be dismissed even if *American Pipe* applied to toll her individual claims. *See China*

8

Here, Santana says the Court should toll her claims under *American Pipe* because she was a putative class member in two class-action lawsuits: *Bowles v. Sabree*, No. 20-12838 (E.D. Mich. 2020) and *Wayside Church v. Van Buren Cty.* No. 14-01274 (W.D. Mich. 2014). But neither class action warrants application of *American Pipe* tolling here.

For one, the complaint in *Bowles* was not filed until October 22, 2020, almost two years after Santana's claims expired in November 2018. Complaint, *Bowles v. Sabree*, No. 20-12838 (E.D. Mich. 2020) (available on that docket at ECF No. 1). So *Bowles* does nothing to toll Santana's statute of limitations because her claims expired before that class action was filed.

As for *Wayside*, it was filed on December 11, 2014—before Santana's home was seized by Wayne County and later sold at auction on November 10, 2015. *See* Complaint, *Wayside Church*, No. 14-01274 (available on that docket at ECF No. 1). But because the Court finds that the Defendants were not named defendants in the *Wayside* class action, *American Pipe* tolling is not available to Santana.

The Sixth Circuit has explained that "the tolling of limitations periods against a defendant by a class action would not apply to a subsequent action against a different defendant even if the claims arise out of the same or similar transaction." *Guy v. Lexington-Fayette Urban Cnty. Gov't*, 488 F. App'x 9, 21 (6th Cir. 2012)

---

*Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1806 (2018) (holding that "upon denial of class certification, a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, may not commence a class action anew beyond the time allowed by the applicable statute of limitations").

9

("[C]lass action tolling does not apply to a defendant not named in the . . . complaint." (citing *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 414 F.3d 553, 567–68 (6th Cir. 2001))). "In short, the tolling caused by the filing of one putative class action cannot toll statutes of limitations for claims against a different defendant in a second putative class action." *Id.*

On the face of the complaint in *Wayside*, plaintiffs named Van Buren County and the Van Buren County Treasurer as defendants individually and "on behalf of a class of all other Michigan counties" and "Treasurers of Michigan Counties similarly situated." *Wayside Church*, No. 14-01274 (available on that docket at ECF No. 1, PageID.1). Santana says Wayne County and the Wayne County Treasurer were thus included in that defendant class until the "*Wayside* court dismissed half of the defendant class[,] narrowing the claims to counties in the Western District" on February 16, 2021. (ECF No. 16, PageID.119.)

Defendants counter that *Wayside* cannot toll the statute of limitations because Wayne County and the Wayne County Treasurer were not parties to that case or, at best, were putative defendants. (ECF No. 17, PageID.137.)

In particular, Defendants point out that they were never named defendants in *Wayside*, never entered an appearance in *Wayside*, and never participated as a party in *Wayside*. Instead, plaintiffs there sought certification of a "defendant class" per Federal Rule Civil Procedure 23(a)—which, if granted, would have designated Van Buren County (the only named defendant) as the class representative for all other foreclosing counties in Michigan, including Wayne County. Br. in Supp. of Mot. to

10

Consolidate, *Wayside Church*, No. 14-01274 (available on that docket at ECF No. 72, PageID.722). Thus, say Defendants, "at most, Wayne County was only ever a putative defendant class member in Wayside." (ECF No. 17, PageID.137 (emphasis omitted).) And "[a]bsent class certification, putative class members are not parties before a court." *Molock v. Whole Foods*, 952 F.3d 293, 295 (D.C. Cir. 2020); *see also In re Vertrue Inc. Mktg. & Sales Pracs. Litig.*, 719 F.3d 474, 480 n.1 (6th Cir. 2013) ("Parties in this case, none of whom were named parties in *Ritt,* are not precluded from litigating the class issue because unnamed class members are not parties to a putative class action and are not bound by that adverse certification decision.").

So the Court must decide whether *American Pipe* tolling can apply to claims brought against a defendant that was not a named defendant in a prior class action complaint, but was merely a putative defendant class member. Given the Sixth Circuit's holding in *Wyser-Pratte* and the logic of the Supreme Court's holding in *American Pipe*, the Court finds that tolling the statute of limitations based on *Wayside* is not available for claims brought against putative defendant class members like Wayne County and the Wayne County Treasurer.

In finding that *American Pipe* tolling did not apply to claims brought against unnamed defendants, the Sixth Circuit in *Wyser-Pratte* opined that "the first principle of significance . . . is that the class action must afford the defendant with adequate notice." 413 F.3d at 567. In *American Pipe*, the Supreme Court explained that:

> policies of ensuring essential fairness to defendants and of barring a plaintiff who "has slept on his rights" . . . are satisfied when, as here, a named plaintiff

11

> who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.

414 U.S. at 554–55.

And Justice Powell cautioned that "[w]hen thus notified, the defendant normally is not prejudiced by tolling of the statute of limitations. It is important to make certain, however, that *American Pipe* is not abused by the assertion of claims that differ from those raised in the original class suit." *Crown*, 462 U.S. at 355, (Powell, J., concurring).

Consistent with this principle, the Court cannot say that Defendants here—despite being members of a putative class of defendants in a different suit—were on notice of the substantive claims brought against them. To the contrary, Defendants have avowed that they were never participants or parties to the litigation in *Wayside*, never filed an appearance, and thus, never received notice of the litigation, the substantive claims filed against them, or the potential plaintiffs that may participate in the ultimate judgment. So Defendants are akin to the unnamed defendants in *Wyser-Pratt*—they were not parties to the *Wayside* litigation, nor did they receive adequate notice such that tolling Santana's claims based on the *Wayside* litigation would be justified. And as the Sixth Circuit emphasized, tolling under *American Pipe* is "consistent with purposes of putting defendants on notice of adverse claims and preventing plaintiffs from sleeping on their rights." *Wyser-Pratte*, 413 F.3d at 567

12

(internal citation omitted). Tolling the statute of limitations here would be inconsistent with both of those purposes, and the Court declines to do so.[2]

In sum, at best, Santana's § 1983 claims expired in November 2018. She waited almost four years after the limitations period on her claim ran out—and almost seven-years after the act that gave rise to her claim occurred—to file this suit. Thus, her claim is untimely and *American Pipe* tolling cannot save it. While the Court sympathizes with Santana's plight, she simply waited too long before seeking redress.

Accordingly, Santana's § 1983 takings claim (Count I) must be dismissed.

### IV. Federal Excessive Fines Claim

The Excessive Fines Clause of the Eighth Amendment "limits the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'" *Austin v. United States*, 509 U.S. 602, 609–10 (1993) (internal citation omitted) (emphasis in original).

Defendants argue that Santana has failed to state a claim under the Eighth Amendment. Specifically, Defendants rely on *Hall*, which they say stands for the proposition that a tax foreclosure, and the withholding of excess proceeds from a tax-

---

[2] Santana points to one case in the Western District of Michigan that tolled the statute of limitations for the plaintiffs' takings claims given the *Wayside* litigation. *See Grainger, Jr. v. Cnty. of Ottawa*, No. 1:19-CV-501, 2021 WL 790771, at *8 (W.D. Mich. Mar. 2, 2021). Importantly, the court in *Grainger* did not grapple with the question of whether the defendants were akin to unnamed defendants because they were merely putative class members. Instead, the court found tolling appropriate because the plaintiffs' surviving claims were substantively the same as those brought in *Wayside*, noting that "should Wayside Church's motion for class certification be granted, Plaintiff would be a member of the class." *Id*. But here, Santana would not be a member of the *Wayside* class because she lives in the Eastern District.

13

foreclosure sale, are not punishments, and thus, would not be governed under the Excessive Fines Clause of the Eighth Amendment. (ECF No. 14, PageID.94–95.) In her response, Santana concedes that the Sixth Circuit's holding in *Hall* forecloses her Eighth Amendment claim. (*See* ECF No. 16, PageID.123 (stating that "understanding the ruling in *Hall*, Plaintiff concedes the Eighth Amendment claim").) Accordingly, the Court will dismiss Santana's Eighth Amendment claim (Count V).

### V. State-law Claims

That leaves Santana's state-law claims. In a one-line footnote citing only the Sixth Circuit's opinion in *Hall*, Defendants argue the Court should dismiss Santana's Michigan Constitution takings claim on jurisdictional grounds. (*See* ECF No. 14, Page.ID.94 (stating that "*Hall* also requires dismissal of Count IV because federal courts should abstain from ruling on state law takings claims in this context, as that 'is an issue for the Michigan courts to decide'" (internal citation omitted)).) Defendants also argue that Santana's inverse-condemnation claim (Count III) must be dismissed because she does not have "any right or title to the Property." (*Id.*)

It is true that the Sixth Circuit in *Hall* reversed the district court's dismissal of plaintiffs' Michigan Constitution claim and directed the court to abstain from adjudicating it, noting that "whether the facts alleged violate the Michigan Constitution's Takings Clause is an issue for the Michigan Courts to decide." *Hall*, 51 F.4th at 196. But the Sixth Circuit specified that it was vacating the district court's dismissal of the Michigan Constitution claim given its "decision [to reverse dismissal of] the plaintiffs' takings claim under the U.S. Constitution" and it invoked *Pullman*

14

abstention in directing the district court to abstain from deciding plaintiffs Michigan Constitution claims. *Id.* (citing *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496 (1941)). Thus, Defendants appear to be asking the Court to apply *Pullman* abstention.

But *Pullman* abstention does not apply here since Santana's federal claims have been dismissed. *See Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011) ("Abstention under [*Pullman*], is appropriate only where state law is unclear and a clarification of that law would preclude the need to adjudicate the federal question.").

Nonetheless, the Court will decline to exercise supplemental jurisdiction over Santana's state-law claims. Federal courts have discretion to decline to exercise supplemental jurisdiction over state-law claims when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c) (subsections omitted); *see also Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996), *amended on denial of reh'g*, No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998) (stating that "28 U.S.C. § 1367(c)(3) . . . provides that a district court 'may' (rather than must) decline to exercise jurisdiction if 'the district court has dismissed all claims over which it has original jurisdiction'" and noting that "[a]s a rule of thumb . . . . when all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims" (citing *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988))). Because the Court has dismissed all federal claims over which it has original jurisdiction, the Court

declines to exercise supplemental jurisdiction over Santana's inverse-condemnation and Michigan Constitution claims.

Accordingly, Santana's inverse-condemnation claim (Count III) and Michigan Constitution claim (Count IV) are dismissed without prejudice.

## VI. Conclusion

For the reasons stated, Defendants' motion to dismiss is GRANTED. A separate judgment will follow.

SO ORDERED.

Dated: August 31, 2023

                                                  s/Laurie J. Michelson
                                                  LAURIE J. MICHELSON
                                                  UNITED STATES DISTRICT JUDGE